UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL NO. 06-426-DCR

RODNEY MAYS                                                      PETITIONER


VS:                          RECOMMENDED DISPOSITION


LARRY CHANDLER, WARDEN                                    RESPONDENT

* * * * * * * *

This matter is before the Court on a *pro se* 28 U.S.C. § 2254 motion by Petitioner Rodney

Mays.[1]  *See* DE# 1.  The District Court referred the matter to the undersigned for a recommended

disposition.  Having fully considered the record, including Mays's petition, the Commonwealth's

motion to dismiss, and Petitioner's response, this matter is ripe for review.  *See* DE ## 1, 10, 11, and

14.  For the reasons stated herein, the Court  recommends that the District Court DENY Petitioner's

§ 2254 application for a writ of habeas corpus.

**I. Factual Background**

The instant § 2254 petition challenges a 1999 murder conviction in Clay Circuit Court.  The

facts, drawn largely from Kentucky appellate dispositions, are as follows.

---

[1]

The Court notes that Mays's § 2254 petition is unsigned and unverified, a deficiency
overlooked on initial review.  *See* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall
be in writing signed and verified by the person for whose relief it is intended."); *see also* Rule
2(b)(5) of the Rules Governing Section 2254 Cases ("The petition must . . . be signed under penalty
of perjury by the petitioner.").  Considering the posture of this action, the Court reaches and resolves
the merits of the petition, despite the technical defect.  However, the Court instructs Mays to cure
the defect, by verifying the content of the original motion and memorandum, in order to appeal or
object to the Court's recommended disposition.

1

Petitioner Rodney Mays, co-defendant Anthony Simmons, and Curtis Smith traveled together to Britton Branch, a remote area of Clay County, Kentucky, on the evening of February 6, 1997. Police found Smith's body the following day and questioned both Mays and Simmons. The two suspects reported that they had dropped Smith off on the way to Britton Branch, and that neither suspect had seen Smith again. The murder remained unsolved. *See Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 2 (Ky. July 28, 2001).

More than a year later, Simmons contacted and provided a recorded statement to police. At the time, Simmons was in custody at the Laurel County Jail on a DUI charge. According to Simmons's statement, he, Mays, and Smith had been drinking and taking drugs on the night in question. The group stopped at Stevie Collins's game room in Clay County. Mays entered the game room while Simmons and Smith remained in the car. After Mays returned, the three drove to a house to purchase more alcohol and drugs. As Simmons and Mays walked toward the house, Mays informed Simmons that Collins had offered Mays $5,000 to kill Smith. Simmons disbelieved Mays at the time. *See id*.

The group next proceeded to Britton Branch. After the group had arrived and built a fire by the road, Mays went to the car to turn on the radio. When Mays returned from the car, Simmons reported that Mays shot Smith in the back of the head. Mays then fired the remaining rounds into Smith's body, reloaded the gun, and forced Simmons at gunpoint to help Mays remove the body. Afterwards, Simmons and Mays returned to Collins's game room, and Mays collected the $5,000. Mays gave $1,000 to Simmons and told Simmons what to say if police questioned him. *See id*. at 2-3.

2

Authorities interviewed Mays after Simmons's statement. Mays provided a different version of events. In a recorded statement, Mays admitted that Collins had offered him $5,000 to kill Smith. According to Mays, he initially agreed, and Collins provided Mays with a firearm. However, Mays claimed that he changed his mind, although Collins then threatened to kill Mays. Mays related his conversation with Collins to Simmons before the group traveled to Britton Branch. At this point, the stories further diverge. *See id.* at 3.

Mays claimed that Simmons killed Smith at Britton Branch and then ordered Mays also to shoot Smith. Mays believed that his shot missed Smith, and he denied removing Smith's body. Afterwards, Mays reported that he returned to Collins's game room, collected the $5,000, and provided Simmons with $2,000. *See id.*

Mays provided yet a different version of events in testimony at trial. He testified that Simmons was having an affair with Smith's wife, Brenda, and that Simmons was angered with Smith for abusing and injuring Brenda Smith. Mays also stated that Smith owed Simmons a substantial sum of money on a drug debt. After the group arrived at Britton Branch, Mays explained that he went to the car to play some music when he heard gun shots. Mays returned and found Smith slumped over and dead. According to Mays, Simmons forced him to shoot Smith's dead body and warned him not to talk to police. *See id.* Mays attributed his prior inconsistent statement to fantastically-described police coercion. *See Mays v. Commonwealth*, No. 2004-CA-001318-MR, at 11 (Ky. Ct. App. Aug. 23, 2006).

The Commonwealth prosecuted Mays and Simmons jointly in a two-day jury trial, on June 28 and 29, 1999. *See id.* The co-defendants essentially attempted to implicate each other. Mays argues now that both the prosecutor and Detective Mike Hopkins, an investigating officer who

testified at trial, prejudiced the jury by implying that Mays was less credible than Simmons. Because credibility was the key issue, Mays claims that prejudicial comments were critical to the resulting verdict.  *See* DE# 1-2, § 2254 Supporting Memo at 5-6.

The jury found Mays guilty as the principal and convicted Simons as an accomplice.  Mays received a life sentence, and the jury sentenced Simmons to twenty years imprisonment.  *See Mays v. Commonwealth*, No. 2004-CA-001318-MR, at 4.   The Kentucky Supreme Court affirmed Petitioner's conviction in an unpublished opinion. *See Mays v. Commonwealth*, No. 1999-SC-0863-MR (Ky. July 28, 2001).

Mays filed a motion for state post-conviction relief, pursuant to RCr 11.42, on May 31, 2002. The motion alleged ineffective assistance of counsel based on trial counsel's failure to object to Detective Hopkins's prejudicial testimony.  The state trial court appointed counsel, who filed supplemental pleadings, and conducted an evidentiary hearing.  The trial court denied the motion, and Mays appealed to the Kentucky Court of Appeals. *See Mays v. Commonwealth*, No. 2004-CA-001318-MR, at 5. Although the state appellate court found that counsel should have objected to Detective Hopkins's testimony, the court found no prejudice and denied RCr 11.42 relief.  *See id*. at 8-9.

## II.  Issues Presented

Mays filed the instant § 2254 petition on September 18, 2006.  He charges that:

> 1) the state trial court should have conducted a *Remmer* hearing after defense counsel alleged to the trial judge that a juror had engaged in unauthorized communication;

> 2) the state trial court should have instructed the jury on criminal facilitation to murder as a lesser included offense;

4

3) the prosecutor improperly vilified the Petitioner during closing argument;

4) the prosecutor improperly commented on Petitioner's constitutional right to remain silent;

5) the prosecutor improperly expressed his personal opinion concerning Petitioner's guilt at both the guilt and penalty phase of trial;

6) the prosecutor played an unredacted and prejudicial interrogation tape that featured inferences, by the interviewing police officer, that Petitioner was being dishonest; and

7) trial counsel provided ineffective assistance by failing to object to Detective Hopkins's testimony.[2]

Besides contesting the merits of these claims, the Commonwealth contends that Mays procedurally defaulted the first six habeas claims enumerated above.

## III.  Standard of Review

The standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern federal habeas review of a state court decision.  *See French v. Jones*, 332 F.3d 430, 435 (6th Cir 2003).  The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

_____

[2] Woven into Petitioner's central ineffective assistance of counsel claim are allegations that counsel "drank heavily," "was under the influence of cocaine," and failed to present an entire defense. *See* DE# 1-2, § 2254 Supporting Memo at 30.  In its motion to dismiss, the Commonwealth argued that these additional allegations are unexhausted or procedurally defaulted.  Petitioner, in response, sought "permission to withdraw" the allegations. *See* DE# 14, Response at 6 (¶7).  As such, Petitioner's ineffective assistance claim concerns only Detective Hopkins's unchallenged testimony.

> (1) resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States*; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d)(1)-(2)(emphasis added).

The "contrary to" and "unreasonable application" clauses in § 2254(d)(1) have independent meanings. *See Bell v. Cone*,122 S.Ct. 1843, 1850 (2002). A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 120 S.Ct. 1495, 1519-20, 1523 (2000); *see also Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000).

An "unreasonable application" of federal law occurs if a state court identifies the correct legal principle from a Supreme Court decision but unreasonably applies that principle to the facts of the prisoner's case. *See Williams,* 120 S.Ct. at 1520-21. This may involve unreasonably extending the legal principle to a new context where the principle should not apply, or unreasonably refusing to apply the principle where the circumstances demand its application. *See Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003) (citing *Williams,* 120 S.Ct. at 1519). Furthermore, the petitioner must show that the application of federal law by the state court is "objectively unreasonable," not merely incorrect. *See Williams*, 120 S.Ct. at 1521-23; *see also Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003).

Under either prong, the state court adjudication must contravene "clearly established federal law." "[C]learly established federal law" refers to Supreme Court holdings, as opposed to dicta,

6

rendered at the time of the relevant state-court decision. *See Williams*, 120 S.Ct. at 1523.  Lower federal court decisions, though not binding precedent, may inform this analysis and help "determine whether a legal principle had been clearly established by the Supreme Court." *See Foley v. Parker*, 488 F.3d 377, 382 (6th Cir. 2007).

In addition, the AEDPA provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a *determination of a factual issue made by a State court shall be presumed to be correct*.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(e)(1)(emphasis added).  The "presumption of correctness" requires this Court to give appropriate deference to state court findings of fact. *See Carter v. Bell*, 218 F.3d 581, 590-91 (6th Cir. 2000)(noting that the amended AEDPA standard requires greater deference to state courts). Under the provisions of  § 2254(e)(1), "[p]rimary or historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence." *Lancaster*, 324 F.3d at 429 (citations omitted).  The presumption of correctness also attaches to factual findings, by state appellate courts, based on the trial record. *See Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003) (citing *Sumner v. Mata*, 101 S.Ct. 764, 769 (1981)).

**IV. Analysis**

  *A.    Procedural Matters*

There are no procedural defects at issue concerning exhaustion, successiveness, timeliness, or jurisdiction.  However, the Commonwealth argues that Petitioner procedurally defaulted habeas claims 1, 2, 4, 5, and 6 enumerated above.  Without even addressing the Commonwealth's default arguments, the Court finds that one of the six claims must fail on habeas review.  Specifically, Mays

7

argues that the state trial court violated his federal due process rights by failing to instruct the jury on criminal facilitation as a lesser included offense to murder. According to the Sixth Circuit, a state trial court's failure to instruct on a lesser included offense in a noncapital case "is not a sufficient basis for granting habeas relief." *See Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). Thus, Petitioner's jury instruction claim fails, irrespective of the merits and the procedural default issue.[3]

Below, the Court considers the procedural default rule and the habeas claims challenged by the Commonwealth on default grounds.

*Procedural Default*

A state procedural default of any federal claim generally bars habeas review as to that claim. *See Coleman v. Thompson*, 111 S.Ct. 2546, 2564 (1991). There are two forms of default. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a state court may decline to reach the merits of a claim because the petitioner violated a state procedural rule. *See id*; *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006); *see also Wainwright v. Sykes*, 97 S.Ct. 2497, 2506 (1977). Default also occurs when the petitioner failed to "present" his federal claim in state court, and state law prohibits the petitioner from returning to state court to litigate the claim. *See Anderson*, 460 F.3d at 806; *Lundgren*, 440 F.3d at 763; *see also O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1733-34 (1999).

<u>Unauthorized Juror Communication</u>

The Kentucky Supreme Court dispatched the first habeas claim at issue, which involved alleged unauthorized juror communication, in two paragraphs. The court stated:

---

[3]

Although the Commonwealth prosecuted Mays for murder, the state did not seek the death penalty. Instead, life imprisonment was the maximum punishment available. *See* DE# 11-10, Appendix Jury Instructions. Thus, Petitioner's trial constituted a noncapital case.

8

> During the course of the trial, counsel for Mays approached the trial judge and advised that it "had come to [his] attention" that one of the jurors had been conversing with two women dressed in red, one of whom was believed to be the victim's mother. The trial judge responded that he would inquire into that at some point in time. Defense counsel did not request a hearing, an admonition, or a mistrial. If a party desires a ruling or some other affirmative action on the part of the trial judge, it is his duty to insist on a ruling and failure to do so constitutes waiver of the issue. It was never confirmed that either of the two women in red actually spoke to a juror; or, if so, that one of them was the victim's mother; or, if so, that they were conversing about the trial.
>
> The trial judge admonished the jury before each recess that they were not to talk to anyone about the case. In the absence of any contrary evidence, jurors are presumed to adhere to that admonition.

*Mays v. Commonwealth*, No. 1999-SC-0863- MR, at 6-7 (citations omitted).

Based on the supreme court's waiver analysis, the Commonwealth contends that Petitioner defaulted this claim. Waiver would constitute default if: a) the petitioner failed to comply with a state procedural rule; b) the state court enforced the rule against petitioner; and c) the procedural rule is an "adequate and independent" state ground that forecloses habeas review. *See Lundgren*, 440 F.3d at 763.

After carefully reviewing the supreme court's decision, the Court finds that the waiver analysis "falls short of an explicit reliance on a state-law ground." *See Harris v. Reed*, 109 S.Ct. 1038, 1045 (1989); *Coe v. Bell*, 161 F.3d 320, 330-31 (6th Cir. 1999). The state court remarked that counsel did not request a hearing, an admonition, or a mistrial, and then explained that failure to insist on a ruling by the trial court constitutes waiver. Although these comments "laid the foundation," the Kentucky Supreme Court did not take the next "step" and explicitly state that Mays had waived the issue. *See Harris*, 109 S.Ct. at 1045; *Coe*, 161 F.3d at 330-31. That missing step is pivotal. *See Coe*, 161 F.3d at 330-31. Consequently, the decision lacks a "sufficiently clear and

express statement" that the Kentucky Supreme Court actually "relied" on the wavier as a procedural bar in this case. *See Harris*, 109 S.Ct. at 1045; *Coe*, 161 F.3d at 331.

Moreover, immediately after the waiver discussion, the court continued its evaluation of the claim with a summary discussion of the merits.  The court noted that there was no actual evidence of unauthorized juror communication and thus presumed that the jurors had adhered to the trial court's repeated admonitions.  This additional analysis would not affect the procedural default rule if it were an "alternative holding."  *See Harris*, 109 S.Ct. at 1044 n. 10; *Scott v. Mitchell*, 209 F.3d 854, 877 (6th Cir. 2000).  However, the transition was seamless, and the text does not signal whether the merits-review was or was not an alternative holding.  *See Frazier v. Huffman*, 343 F.3d 780, 800 (6th Cir. 2003)(finding "no express statement" by the state court that its conclusion on the merits was an alternative holding).

By considering the merits in this context, the "possibility" is "amplified" that the Kentucky Supreme Court did not rely on Petitioner's waiver as a procedural bar, and the resulting ambiguity cuts against application of the procedural default rule   *See Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003); s*ee id*. at 499 ("[T]here must be unambiguous state-court reliance on a procedural default for it to block [habeas] review.").  Once the Kentucky Supreme Court addressed the substance of the claim, the waiver analysis became "insufficient to demonstrate clearly whether the court intended to invoke wavier" as a procedural bar.  *See Harris*, 109 S.Ct. at 1045 n. 13.

As such, the supreme court decision did not explicitly enforce a procedural rule or rely on Petitioner's waiver as an independent state-law ground, as the second and third factors require.  *See Lundgren*, 440 F.3d at 763.  For these reasons, the Court finds that Petitioner did not default the first habeas claim.

Right to Remain Silent

Mays vaguely alleges that the prosecutor improperly commented on his right to remain silent.  The Commonwealth argues that the claim fails procedurally because Petitioner did not present the claim before the Kentucky Supreme Court.  Petitioner's supreme court brief made one fleeting reference to the issue in an argument heading, but the brief did not address the issue substantively.  *See* DE# 17-2, Appellant Supreme Court Brief at 14-18.  Likewise, the state supreme court decision did not acknowledge the argument.[4]  *See Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 7-8.

A federal claim that is not "fairly presented" in state court and pursued through the "state's ordinary appellate review procedures" is procedurally defaulted.  *See Anderson*, 460 F.3d at 806.  A fairly presented claim must allege a federal constitutional violation–not a state law issue–and "assert both the legal and factual basis" to support the federal claim.  *See id*.

The Sixth Circuit considers four actions that are significant in determining whether a petitioner "fairly presented" federal habeas claims in state court: 1) reliance upon federal cases employing a constitutional analysis; 2) reliance upon state cases employing a federal constitutional analysis; 3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or 4) alleging facts well within the mainstream of constitutional law.  *See id*.; *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006).

Here, Petitioner merely stated, among a series of other claims in an argument heading, that the prosecutor commented on Petitioner's right to remain silent.  *See* DE# 17-2, Appellant Supreme Court Brief at 14.  Petitioner provided no supporting legal or factual basis, no citation to relevant

---

[4]

The claim would be an oddity, given the fact that Mays did testify.

11

legal authorities, and no specific allegations regarding this particular argument.  *See id*. at 14-18; *Anderson*, 460 F.3d at 806; *Slaughter*, 450 F.3d at 236.  Under these circumstances, the Court finds that Petitioner did not "fairly present" the claim to the Kentucky Supreme Court.  *See Coleman v. Mitchell*, 268 F.3d 417, 440 (6th Cir. 2001)("It is well settled that a prisoner seeking habeas relief in federal court must have presented the claim upon which he seeks relief to the state appellate courts.")(citation omitted).  Thus, the Court finds that Petitioner defaulted the argument.

Personal Opinion of Guilt

The next allegation of prosecutorial misconduct actually involves two instances of potential wrongdoing.  Mays charges that the prosecutor expressed his personal opinion as to Petitioner's guilt at **both** the guilt and penalty phases of trial.  In support of the claim, Petitioner quotes passages from the prosecutor's closing argument at each trial stage.  *See* DE# 1-2, § 2254 Supporting Memo at 19.  However, Petitioner conceded in his Kentucky Supreme Court brief that he did not preserve either issue for appeal by a contemporaneous objection at trial.  *See* DE# 17-2, Appellant Supreme Court Brief at 14; *see also Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 7 (noting lack of preservation).  Petitioner's procedural error would constitute default if: a) the petitioner failed to comply with a state procedural rule; b) the state court enforced the rule against petitioner; and c) the procedural rule is an "adequate and independent" state ground that forecloses habeas review.  *See Lundgren*, 440 F.3d at 763.

Petitioner's admitted lack of preservation establishes the first factor.  As to the guilt-phase comments, however, it is not immediately clear that the state supreme court enforced the procedural rule, as the second factor requires.  Although Petitioner's state supreme court brief included a quoted passage from the prosecutor's guilt-phase closing argument, the Kentucky Supreme Court did not

12

acknowledge the cited guilt-phase comments in its decision.  Rather, the court explained: "The expression of opinion as to Mays's guilt occurred not during the prosecutor's guilt-phase argument, but during his penalty-phase argument."  *See Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 7.  Thus, the state court decision is silent as to the contested guilt-phase remarks.

According to the Supreme Court, unexplained state court decisions are presumed to "rest upon the same ground" as the last-preceding state decision with an explicit decisional basis. *See Ylst v. Nunnemaker*, 111 S.Ct. 2590, 2594 (1991).  That presumption, however, is inapplicable in this case.  *See Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).  Petitioner conceded in his state supreme court brief that he did not object to the guilt-phase statements at trial, and the state supreme court decision did not acknowledge the prosecutor's guilt-stage remarks.  Thus, no state court has explicitly entertained the challenged guilt-phase comments.  *See id*.

*Simpson v. Sparkman* involved similar circumstances.  In *Simpson*, the habeas petitioner had failed to move for a directed verdict at trial, but then he challenged the sufficiency of the evidence on appeal.  The Kentucky Court of Appeals denied relief "without addressing the merits" of the unpreserved claim "or disposing of it on procedural grounds."  *See id*.  The Sixth Circuit "assume[d] that had the state court addressed petitioner's due process claim, it would not have ignored its own procedural rules and would have enforced the procedural bar."[5]  *See id*. at 203.

---

[5]

*Simpson* may seem inconsistent with *Bowling*, which provides that "there must be unambiguous state-court reliance on a procedural default."  *See Bowling*, 344 F.3d at 499.  In *Bowling*, however, the state court recognized and discussed the procedural defect, but then still addressed the merits of the claim.  *See id*. at 498-99.  To the extent that the merits may have rested on federal law, the state court must "clearly and expressly" state that the decision alternatively rests on an "independent" state-law ground.  *See Simpson*, 94 F.3d at 202.  Because the state court did not provide a clear and express statement, it was ambiguous in *Bowling* whether the state court alternatively rested its decision on the state procedural bar.

In *Simpson*, by comparison, the state court did not address the merits or the procedural

The Court finds that *Simpson* governs the facts of this case. Accordingly, the Court assumes that the Kentucky Supreme Court would have enforced Petitioner's admitted procedural error had the court specifically addressed the guilt-phase comments and claim. *See id*. The Court's finding, per *Simpson*, satisfies the second default factor. *See Lundgren*, 440 F.3d at 763. Because Petitioner did not challenge the guilt-stage remarks with a contemporaneous objection at trial, the third factor exists. The Sixth Circuit recognizes that Kentucky's contemporaneous objection rule is an "adequate and independent" state ground that forecloses habeas review. *See Hollin v. Sowders*, 710 F.2d 264, 267 (6th Cir. 1983); *see also Wilson v. O'Dea*, 1994 WL 6806, at *7 (6th Cir. Jan. 10, 1994). Thus, the Court concludes that Petitioner defaulted the guilt-phase misconduct claim.

The same result applies to the challenged penalty-phase statements. Mays conceded in the supreme court brief that he did not contemporaneously object to the penalty-stage comments and preserve the issue for appeal. *See* DE# 17-2, Appellant Supreme Court Brief at 14; *Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 7. Unlike the challenged guilt-phase statements, the state supreme court actually reviewed the penalty-stage comments for palpable error, pursuant to RCr 10.26. *See id*. The Sixth Circuit considers a plain error review by the state appellate court as

---

defect. *See id*. Since the court did not consider the merits, the decision could not have rested on federal law, and the clear and express statement requirement did not apply. *See id*. Moreover, because the procedural defect was apparent, the Sixth Circuit assumed that the state court would have enforced the default. *See id*. at 203.

The distinction between *Simpson* and *Bowling* explains the Court's analysis of the unauthorized juror communication claim and the contested guilt-phase comments. The Kentucky Supreme Court addressed the substance of the former habeas claim, but did not provide a clear and express statement that the decision alternatively rested on the court's waiver analysis. Absent a clear and express statement, state-court reliance on the waiver was indeterminate. By contrast, the state supreme court did not acknowledge the contested guilt-phase comments, and Mays admitted that he failed to preserve the issue for appeal. Per *Simpson*, the Court assumes that the state court would have enforced the procedural bar had it, in fact, addressed the issue.

the enforcement of a procedural bar. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001);

*Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th

Cir. 1989). And again, the Sixth Circuit recognizes that Kentucky's contemporaneous objection rule

is an "adequate and independent" state ground that forecloses habeas review. *See Hollin*, 710 F.2d

at 267; *see also Wilson*, 1994 WL 6806, at *7. Thus, the three default elements exist, and the Court

finds that Petitioner defaulted the penalty-phase misconduct claim. *See Lundgren*, 440 F.3d at 763.

<u>Interrogation Tape</u>

Petitioner's final prosecutorial misconduct claim, which involves use of an unredacted

interrogation tape, also fails on default grounds. Mays conceded in his state supreme court brief that

he did not preserve the argument for appellate review with a contemporaneous objection. Thus,

Mays failed to comply with a state procedural rule. *See* DE# 17-2, Appellant Supreme Court Brief

at 14; *Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 7; *Lundgren*, 440 F.3d at 763. The

Kentucky Supreme Court reviewed the claim for palpable error, which the Sixth Circuit equates to

the enforcement of a procedural bar. *See Hinkle*, 271 F.3d at 244; *Seymour*, 224 F.3d at 557;

*Paprocki*, 869 F.2d at 284-85. Finally, Kentucky's contemporaneous objection rule is an "adequate

and independent" state ground that forecloses habeas review. *See Hollin*, 710 F.2d at 267; *see also*

*Wilson*, 1994 WL 6806, at *7. As a result, Petitioner defaulted the interrogation tape claim.

In sum, Petitioner defaulted three of his habeas claims ("right to remain silent" claim,

"personal opinion of guilt" claim, and "interrogation tape" claim). The Court may reach and

consider the defaulted claims only if Petitioner demonstrates: a) cause and actual prejudice; or b)

that failure to review the claims will result in a "fundamental miscarriage of justice." *See Coleman*,

111 S.Ct. at 2564; *Lundgren*, 440 F.3d at 763-64. Cause "must ordinarily turn on whether the

prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 106 S.Ct. 2639, 2645 (1986). Moreover, the petitioner must present affirmative evidence or argument concerning the precise cause and prejudice produced. *See Lundgren*, 440 F.3d at 764. This showing "requires more than the mere proffer of an excuse," and the petitioner "cannot rely on conclusory assertions of cause and prejudice." *Id*. at 763-64.

In the absence of cause and prejudice, the petitioner must establish that habeas review is "necessary to correct a fundamental miscarriage of justice." *See Coleman*, 111 S.Ct. at 2564. A fundamental miscarriage of justice occurs when a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Murray*, 106 S.Ct. at 2649; *Lundgren*, 440 F.3d at 764.

The Court finds that these narrow exceptions to the procedural default rule do not apply in this case. Petitioner responded to the Commonwealth's motion to dismiss, and the response addressed the default issue. However, as to the three defaulted claims, Petitioner's response brief did not demonstrate cause and prejudice, or establish a fundamental miscarriage of justice.[6] *See Mitchell*, 268 F.3d at 440. Consequently, the Court may not consider Petitioner's defaulted claims on habeas review. *See id*. at 440-41.

---

[6] Petitioner's response brief did not even discuss the nominal claim that the prosecutor commented on Mays's right to remain silent. As to the "personal opinion of guilt" claim and the "interrogation tape" claim, Mays argued that the issues are not defaulted because the supreme court reached the merits. *See* DE# 14, Response at 5-6. Mays, however, is mistaken. The Kentucky Supreme Court reviewed those claims only for palpable error, pursuant to RCr. 10.26. *See* DE# 17-2, Appellant Supreme Court Brief at 14; *Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 7.

B.    *Substantive Issues*

After eliminating the jury instruction claim and applying the procedural default rule, three habeas claims remain.  The claims allege: i) unauthorized juror communication, warranting a *Remmer* hearing; ii) prosecutorial misconduct by vilification of Petitioner;[7] and iii) ineffective assistance because counsel failed to object to Detective Hopkins's inadmissible testimony.  The Court rejects these claims on the merits for the reasons stated below.

*i) Unauthorized Juror Communication*

Defendant alleges that a trial juror had unauthorized communication with two women, and Defendant additionally believes that one of these women was the murder victim's mother.  The record reflects that defense counsel did generally raise the matter with the state trial judge, but counsel did not request a hearing, an admonition, or a mistrial.  *See Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 6-7.  The trial judge replied that he would inquire into the issue at a later time.  *See id*. at 6.  However, neither the trial court nor defense counsel pursued the matter further.  Mays contends that the state trial court's failure to hold a hearing to investigate the potential unauthorized communication violated Petitioner's constitutional right to have the case decided by an impartial jury.

The exact exchange, reflected in the record, is as follows:

> MR. SHORT: Your honor, may I approach for just a second.
>
> BY THE COURT: Yes.
>
> (At the bench)

─────────────────

[7] Petitioner properly preserved the vilification claim at trial, and the supreme court addressed the merits with reference to cases employing a federal analysis.  No procedural bar limits review of that claim.

17

> MR. SHORT: Before we get started on something else, It's come to my attention  that there was a conversation in the hallway between the lady that you just spoke to and the blond headed lady and the two women in the red back there in the back.  I believe one of them is Mr. Smith's mother.
>
> MR. GREGORY: Who Anthony?
>
> MR. SHORT: The blond headed lady that just spoke up and the two ladies there dressed in the red.
>
> BY THE COURT: I'll inquire into that at some point in time.  Let's proceed.

Tr. at 189-90.

The defendant's right in a criminal case to receive a fair trial by a panel of impartial and indifferent jurors is a basic requirement of due process.  *See United States v. Rigsby*, 45 F.3d 120, 122 (6th Cir. 1995)(citing *Irvin v. Dowd*, 81 S.Ct. 1639, 1642 (1961)).  Thus, "[t]he integrity of jury proceedings must not be jeopardized by unauthorized invasions." *Remmer v. United States*, 74 S.Ct. 450, 451 (1954).  In *Remmer*, the Supreme Court advised that the trial court should hold a "hearing with all interested parties permitted to attend" when juror misconduct is alleged, and "determine the circumstances, the impact [of the contact] upon the juror, and whether or not [the contact] was prejudicial." *Id*.   The burden is on the defendant to prove juror partiality. *See United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984).

However, not every allegation of unauthorized communication with a juror requires a hearing pursuant to *Remmer*.  *See White v. Smith*, 984 F.2d 163, 166 (6th Cir. 1993); *see also United States v. Walker*, 160 F.3d 1078, 1083 (6th Cir. 1998); *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997); *Rigsby*, 45 F.3d at 123-24.  The Sixth Circuit indicates that a *Remmer* hearing right arises only in response to a "colorable claim" or "[w]hen there is a credible allegation of extraneous

influences." *See United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999); *Rigsby*, 45 F.3d at 124-25. Further, the unauthorized communication must "present[s] a likelihood of affecting the verdict." *See Rigsby*, 45 F.3d at 123; *see also Frost*, 125 F.3d at 377. This generally occurs when the allegations involve "intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury." *See Frost*, 125 F.3d at 377.

The information provided to the trial court was only a generalized allegation of unknown provenance. A putative hallway conversation somehow had "come to [counsel's] attention." The proffer identified no source for that information. Further, the record does not clearly reflect whether one juror allegedly conversed with two or three women. Nothing in the proffer purports to convey or even suggest the content, length, or context of the discussion, although any contact must surely have been quite public if it occurred in the courthouse hallway. The only suspicious element is counsel's stated (again, foundationless) belief that "one of them [the women] is Mr. Smith's [the victim's] mother." *See* Tr. at 190. The trial court indicated an interest in the topic, stating an intent to "inquire into that at some point in time." It is not clear whether the court wanted more information from counsel or whether the court intended to examine the juror or women in the courtroom. In any event, the trial court did not initiate and Defendant did not seek further evaluation of the issue. Indeed, defense counsel did not request a hearing, an admonition, or a mistrial in connection with the purported communication. *See Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 6-7. Consequently, the record is undeveloped on review and the claim stands weakly supported, as a factual matter.

According to the Sixth Circuit, a defendant who does not request a *Remmer* hearing at trial bears a "heavy burden" on review. *See Walker*, 160 F.3d at 1083. Neglecting to pursue redress

19

under *Remmer* at trial is "significant" and "greatly undercuts" Petitioner's *Remmer* argument at this

stage. *See Carrol v. Renico*, 475 F.3d 708, 711 (6th Cir. 2007)("It is significant that counsel never

asked the trial court to conduct any further investigation or to question the juror individually in

closed chambers."); *White*, 984 F.2d at 166 ("There is another important point worth noting. At no

time . . . did [the defendant] request a hearing for the purposes of assessing the impact of Mrs.

White's comments on the jurors. . . . Defense counsel's failure to request a hearing . . . greatly

undercuts his argument."); *Rigsby*, 45 F.3d at 125 ("Further, defense counsel never unequivocally

requested the court to conduct an evidentiary hearing and did not make a motion for mistrial."); *see

also United States v. Gray*, 2005 WL 3059482, at *12 (N.D. Ohio Nov. 15 ,2005)("A defendant *must*

request a *Remmer* hearing on the prejudice issue, otherwise the Court need not conduct such a

hearing.")(emphasis added).

Further, the Sixth Circuit recently evaluated a *Remmer* claim in which the trial court had not

sua sponte conducted a hearing, and the defendant had not requested a hearing. *See United States

v. Vining*, 224 Fed. Appx. 487 (6th Cir. May 31, 2007). The court reviewed for abuse of discretion,

under the plain error standard, based on the lack of any motion for a hearing at trial. *See id*. at 492.

The *Vining* decision notes that, to require a *Remmer* hearing, a defendant "must do more than simply

raise the possibility of bias" and must "raise a colorable claim of extraneous influence." *See id.; see

also United States v. Corrado*, 227 F.3d 528, 533-37 (6th Cir. 2000) (reversing failure to conduct sua

sponte hearing in light of "serious and credible allegations" of jury tampering, including arrest of

alleged actor).

Petitioner's "failure to develop an adequate record compounds [the] problem" because

"[t]here is no evidence of actual contact or communication." *See Walker*, 160 F.3d at 1083-84. As

20

the Kentucky Supreme Court aptly remarked in this case:

> It was never confirmed that either of the two women in red actually
> spoke to a juror; or, if so, that one of them was the victim's mother;
> or, if so, that they were conversing about the trial.

*Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 7.  Because defense counsel did not pursue a

hearing or other redress, and because there is no record or evidence of unauthorized communication,

the Court finds no error of constitutional magnitude in the habeas context.  *See Walker*, 160 F.3d at

1083-84 ("[There is simply nothing in this record that leads us to conclude that the elevator incident

created a danger of juror bias.  There is no evidence of actual 'contact' or 'communication' . . . .

The defendants' failure to develop an adequate record compounds their problem.  Both had an

opportunity to request a hearing, and neither did so . . . .  We note too that neither party filed a

motion for a new trial on this basis.  For these reasons, we conclude that the district court's handling

of this incident does not provide a basis for reversal."); *see also* 28 U.S.C. §2254(e)(2)(limiting

remedy on undeveloped factual record absent sufficient justification for failure).

The Kentucky Supreme Court noted Mays's failure to seek relief, in any form, on the issue.

Indeed, counsel never asked the trial court for any variety of relief at any time.  The defense did not

move for a hearing, seek an examination of any juror, seek a mistrial, or move for a new trial on the

basis of juror misconduct or the absence of a *Remmer* hearing.  At most, counsel raised a general

issue, with nonspecific support, and the trial court expressed but failed to act on an intent to inquire

further. The Kentucky Supreme Court did not view the record as sufficient to require additional sua

sponte development by the trial court, noting that Defendant did not confirm the identity of any

conversation participants, did not confirm any role by the victim's mother, and did not confirm, or

even allege, a conversation involving the trial.[8]  The supreme court also relied on the trial court's repeated admonitions against improper contact and its presumption of compliance with admonitions in the absence of contrary proof.

    Based on the sourceless and unsupported nature of the defense proffer, the absence of any affirmative request for relief by the Defendant at trial, and the failure of the defense to develop and present the factual basis for an evaluation of the scenario, the Court finds that the state courts did not commit constitutional error warranting relief in the § 2254 context.   Although the matter is debatable, the Court finds that the Supreme Court's evaluation of the record and its determination of the issue is not unreasonable under *Remmer* and its progeny, which the state briefing developed.

### ii) Prosecutorial Vilification

    Petitioner contends that the prosecutor denied him a fair trial under the Fifth and Sixth Amendments by calling Mays a "low-life coward" at closing argument.  *See Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 8.  To prevail on this claim, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *See Dardin v. Wainwright*, 106 S.Ct. 2464, 2471 (1986) "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 94 S.Ct. 1868, 1871 (1974)).

    Here, the Kentucky Supreme Court explained that the "focus on appeal is on the overall fairness of the trial," and the court concluded that the prosecutor's isolated remark did not deny

---

[8]

    Although the supreme court decision visibly criticized defense counsel's inaction on this issue, Defendant's RCr 11.42 motion did not allege ineffective assistance on this ground.  It appears that Mays's co-defendant also determined not to pursue the matter.  Surely, credible allegations of improper juror communication would have received greater attention.

Mays a fair trial.  *See Mays v. Commonwealth*, No. 1999-SC-0863-MR, at 8.  The state court essentially identified the correct constitutional standard announced in *Dardin*.  *Compare Slagle v. Bagley*, 457 F.3d 501, 515 (6ᵗʰ Cir. 2006)(finding the Ohio Supreme Court applied the correct constitutional standard by "asking whether the prosecution's comments 'rendered the trial fundamentally unfair'").  Therefore, the only remaining issue on habeas review is whether the state supreme court reasonably or unreasonably applied the federal standard.  *See id*.

To make that determination, the Sixth Circuit employs a two-prong test.  *See id*.  First, the Court must assess whether the prosecutor's remarks or conduct were improper.  *See id*. at 516.  If improper, the Court must next consider four factors to decide whether the acts or comments were "sufficiently flagrant" to warrant habeas relief.  *See id*.  The factors include: 1) the strength of the evidence against the defendant; 2) whether the improper conduct by the prosecution tended to mislead the jury or prejudice the defendant; 3) whether the improper conduct or remarks were isolated or extensive; and 4) whether the prosecution deliberately or accidentally made the remarks.  *See id*.

Here, the prosecutor's statements were improper.  *See, e.g.*, *Cook v. Bordenkircher*, 602 F.2d 117, 120 (6ᵗʰ Cir. 1979)(finding misconduct because the "prosecutor . . . portrayed petitioner as a lowlife who had to be kept from society").  However, the Court believes, as the Kentucky Supreme Court found,  that the comments are insufficiently "flagrant" to warrant habeas relief under the factors identified by the Sixth Circuit.  *See Slagel*, 457 F.3d at 516.

First, the prosecutor's comments occurred "in the context of a strong evidentiary case against" Mays.  *See id*. at 514.  The co-defendant in this case provided a statement to police that directly implicated Mays.  Simmons claimed that Collins offered Mays $5,000 to kill the victim.

23

According to Simmons, Mays murdered the victim and collected the money that same night. In his own recorded statement to police, Mays admitted that Collins had offered him $5,000 for the murder. Mays further admitted in the statement that he collected the $5,000 and kept the greater share of money, although Mays claimed that Simmons actually committed the homicide. At trial, Mays provided a different version of events. He explained that the victim owed Simmons a substantial sum of money, and that Simmons was having an affair with the victim's wife. According to Mays, Simmons was angry with the victim over spouse abuse. Simmons's statement, Petitioner's admissions concerning the $5,000 contract and its collection, and Petitioner's inconsistent stories all strongly suggest that Mays murdered the victim.

Moreover, the "low-life coward" remark represented an isolated incident of misconduct. *See Slagle*, 457 F.3d at 514, 516; *see also Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000)(finding "prosecutor's comments ... were brief and isolated, and thus did not rise to a level that would deny [the defendant's] right to due process"). As such, it is unlikely that the comments misled the jury or prejudiced Mays. *See Slagle*, 457 F.3d at 515; *see also Cook*, 602 F.2d at 120 (finding prosecutor who "exclaimed that the petitioner was worse than all the 'criminals' and 'traitors' in hell" did not deprive the petitioner of his right to a fair trial). At most, the Court believes that the statements had a minimal effect on the jury's ability to fairly evaluate and assess the evidence. *See Slagle*, 457 F.3d at 514.

On this record, the factors indicate that the state supreme court reasonably applied federal law in rejecting Petitioner's vilification claim. The prosecutor's limited comments in this case fail by a wide margin to meet the standard in *Dardin*. *See, e.g., Simpson*, 238 F.3d at 409 ("In order to deny due process, the misconduct must be so pronounced and persistent that it permeates the entire

atmosphere of the trial or so gross as probably to prejudice the defendant.")(citation omitted).  The

prosecutor's statement was not pronounced or persistent and surely did not "infect" the trial with

unfairness.  *See Dardin*, 106 S.Ct. at 2471; *Simpson*, 238 F.3d at 409.  Habeas relief on this claim

is unwarranted.  *See* 28 U.S.C. §2254(d)(1).

### iii) Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance because trial counsel failed to object

to inadmissible testimony by Detective Hopkins regarding the relative truthfulness of Mays and

Simmons.  The instances of impermissible testimony cited by Petitioner include:

- Detective Hopkins's testimony that he does not begin to tape a statement from a suspect until he has evidence to believe that the information is truthful, and in this case, he started recording Simmons's statements after only an initial short synopsis by Simmons;

- Detective Hopkins's testimony that he believed that Simmons was telling the truth because the pre-recorded interview with Simmons confirmed some of the facts that Detective Hopkins had learned in the investigation;

- Detective Hopkins's testimony that he believed that Simmons was being truthful, and not evasive, during Simmons's interview and statement to police on February 26, 1998;

- Detective Hopkins's testimony that he believed that some of Petitioner's pre-recorded statements to police were not truthful; and

- Detective Hopkins's testimony that "I can say for certain [Mays] plays more in it than [Simmons] just from what facts that came up."

*See* DE# 1-2, § 2254 Supporting Memo at 31.

Based on defense counsel's failure to object to the foregoing testimony, Petitioner filed a

motion for state post-conviction relief pursuant to RCr 11.42.  The state trial court denied the

25

motion, and Petitioner appealed the ruling to the Kentucky Court of Appeals. On review, the state appellate court cited and applied the familiar two-part ineffective assistance of counsel test announced in *Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984).

The state appellate court agreed that the testimony at issue was inadmissible, and the court essentially determined that counsel performed unreasonably by failing to object. *See Mays v. Commonwealth*, No. 2004-CA-001318-MR, at 8-9. However, the state court held that Petitioner's claim failed under the prejudice prong of the *Strickland* test because Mays did not establish, by a reasonable probability, that the outcome of the proceedings would have been different in the absence of Hopkins's testimony. *See id*. at 9. The state court painstakingly explained, as to the lack of prejudice:

> For several reasons the record demonstrates that there is not a reasonable probability that but for Det. Hopkins's impermissible testimony the jury would have believed Mays's version of events concerning who shot Smith over Simmons's version. First, though it had been over a year since the murder and it appears that Mays and Simmons were no longer under active investigation for the crime, Simmons voluntarily came forward and gave a statement to the police in which he admitted being present at the time of the crime and receiving a portion of the alleged payoff by Collins. Simmons's trial testimony was consistent with his police statement. He accounted for coming forward when he did to remorse over his involvement in the crime, and accounted for his delay in coming forward to his fear of Mays and Collins.
>
> Mays, on the other hand, did not voluntarily come forward with a statement to police. His April 7, 1998, statement to the police was a product of Simmons's confession to involvement in the crime. In his April 7, 1998, statement, Mays corroborated Simmons in almost all respects except concerning who did the shooting. Mays admitted that Collins made the proposal to him, that Collins gave him the gun to carry out the killing, that he received the payoff for the killing, and that he kept the greater share of the $5,000 payoff. The only significant deviation from Simmons's account was that Mays changed his mind about going through with the killing, and that

26

Simmons himself then, to Mays's distress, carried out the killing.

Perhaps because he realized the inculpatory nature of his April 7, 1998, statement and its failure to account for a motive for Simmons to follow-through with the killing after Mays had changed his mind, at trial Mays renounced his April 7, 1998, statement and for the first time attributed Simmons's motive for killing Smith to an alleged affair between Simmons and Brenda Smith [the victim's wife], to Simmons's distress at Smith having allegedly beaten Brenda and scarred her face, and to a substantial drug debt Smith allegedly owed to Simmons.  At trial Simmons and Brenda Smith both denied having engaged in an affair.

Mays attributed his April 7, 1998, statement to police coercion. Mays alleges that police told him what to say in his statement, and even stopped, rewound, and paused the tape recorder to get the statement they wanted.  According to Mays, in order to get him to say what they wanted, police deprived him of food and water, deprived him of bathroom privileges, made promises to him that he would be released if he gave the statement they wanted, and made threats concerning his wife and family.  Mays further alleged that Det. Hopkins physically choked him in order to obtain the statement. Despite these allegations of coercion, however, we note that Mays does not cite us to or reference any motion to suppress the statement on the basis of this coercive conduct.

Based upon the foregoing, in order for the jury to have accepted Mays's version of events, it would have had to have discounted that Simmons first went to police and that Simmons was remorseful over the crime; it would have had to have believed that Simmons concocted his entire story, which implicated a prominent Clay County businessman, concerning a murder for hire; it would have had to have believed that Simmons and Brenda Smith were having an affair and that Smith owed Simmons a substantial drug debt; it would have had to have believed that the affair and drug debt were a sufficient motive for Simmons to have killed Smith; and it would have had to have believed that the police coerced Mays's April 7, 1998, statement, even to the point of physically choking him into making the statement.

Because of his changing and inconsistent stories and his attempt to attribute his April 7, 1998, statement to egregious police coercion, Mays's credibility was severely challenged even without Det. Hopkins's improper testimony.  While it is possible that Det.

27

> Hopkins's testimony vouching for the credibility of Simmons over Mays may have swayed the jury to believe that Simmons's version of events in favor of Mays's version of events, we do not believe that this possibility is a probability sufficient to undermine confidence in the outcome of the proceeding considering the totality of the evidence before the jury.  As such, Mays has failed to establish prejudice from trial counsel's failure to object to Det. Hopkins's testimony concerning the truthfulness of the two co-defendants.

*Id*. at 9-13.

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. *See Yarborough v. Gentry*, 124 S.Ct. 1, 4 (2003).  To support a Sixth Amendment ineffective assistance claim, the petitioner must show that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the defense.  *See Strickland*, 104 S.Ct. at 2064.  Where a state court has already rejected an ineffective assistance claim, as the case is here, a federal court may grant habeas relief only if the decision was "contrary to, or involved an unreasonable application of, clearly established federal law."  *See Yarborough*, 124 S.Ct. at 4 (quoting 28 U.S.C. § 2254(d)(1)).  The state court's application of federal law must be "not only erroneous, but objectively unreasonable."  *See Yarborough*, 124 S.Ct. at 4.

Here, although finding that counsel's performance was objectively unreasonable, the Kentucky Court of Appeals determined that counsel's deficiency did not prejudice Petitioner as a constitutional matter.  The state court identified the correct federal standard regarding prejudice and found no "reasonable probability" of a different  outcome in the absence of counsel's error.  *See Moore v. Parker*, 425 F.3d 250, 253 (6th Cir. 2005); *Lordi v. Ishee*, 384 F.3d 189, 194-95 (6th Cir. 2004).  The state court's prejudice analysis, quoted above at length, was thorough, well-supported, and convincing.  In view of the evidence and arguments, the Court finds that the state appellate court

reasonably applied the prejudice standard to the facts of Petitioner's case.  *See Cyars v. Hofbauer*, 383 F.3d 485, 491-93 (6th Cir. 2004).

The circumstances and content of Simmons's statement to police and testimony are more consistent and credible than Petitioner's varying accounts.  Petitioner's initial statement accused Simmons of the crime, but did not establish a motive.  Furthermore, Petitioner's first statement featured several damaging admissions: Collins offered Mays $5,000 to murder the victim, and Mays initially agreed; Collins furnished Mays with a firearm; Mays collected the $5,000; and Mays retained a greater share of the money.  At trial, Petitioner renounced his statement to authorities based on sensational allegations of police coercion.  It appears, however, that Petitioner never moved to suppress his statement on such grounds.  Moreover, Petitioner's subsequent testimony conveniently supplied a motive for Simmons, which Petitioner's statement to police noticeably lacked.  The Court agrees that these circumstances "severely" damaged Mays's credibility, even without Detective Hopkins's improper testimony.  Counsel's failure to object to the testimony did not prejudice Petitioner.  *See*, *e.g*,, *Cyars*, 383 F.3d at 491-93.

At best, Petitioner argues that "there is a reasonable probability that Det. Hopkins's testimony may have influenced the jury" because a juror would give "considerable weight" to the opinion of an experienced investigator who "probably had extra-judicial knowledge of the case that was not in evidence." *See* DE# 1-2, § 2254 Supporting Memo at 36-37.  However, even if the Court believed that the Kentucky Court of Appeals underestimated the prejudicial impact of Detective Hopkins's impermissible testimony, the state court decision would not constitute an *unreasonable* application of federal law.  *See Moore*, 425 F.3d at 254.  For these reasons, Petitioner's ineffective assistance claim fails on habeas review.

## V.  Evidentiary Hearing

Petitioner does not specifically seek an evidentiary hearing.  Even if he did, the Court would deny the request.

A district court may permit additional discovery, in the context of a habeas proceeding, if the "habeas petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate."  *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001).  The reviewing court need not conduct a hearing, however, where the petitioner's allegations  are inherently incredible, refuted by the record, or conclusory. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

Because the record is adequate in this case, and because no substantial factual conflict or avenue for relief appears in the record, the Court believes that neither discovery or a hearing is necessary.  *See Blanton*, 94 F.3d at 235.

## VI.  Appointment of Counsel

Petitioner did  request appointment of counsel. The Court denied that request by separate order soon after filing of the habeas application.  *See* DE #5.  No development altered the Court's initial analysis concerning appointment.

## VII.  Certificate of Appealability

A Certificate of Appealability may issue where the petitioner has made a "substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  This requires the petitioner to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *See Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).  The reviewing

court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

As to all but the *Remmer* claim, Petitioner has not made a "substantial showing" as to any claimed denial of rights. Moreover, this Court believes its determination on the merits is not debatable. Petitioner's claims, to the extent presented for substantive evaluation, do not present a close issue involving a violation or unreasonable application of clearly established federal law. As such, Petitioner generally is not entitled to a Certificate of Appealability.

The Court recommends a Certificate of Appealability as to the *Remmer* issue. A reasonable jurist could determine that the suggestion of improper juror communication required further process by the trial court and that the Kentucky Supreme Court's manner of disposition and analysis warrants relief under § 2254.

## VIII. Recommendation

For the reasons stated in this decision, the Court RECOMMENDS that:

1) the District Court GRANT the Government's motion to dismiss;

2) the District Court DENY, with prejudice, the § 2254 application for a writ of habeas corpus, *see* DE# 1; and

3) the District Court refuse a Certificate of Appealability except as to the *Remmer* hearing issue.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1) and local

rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.  *See also* Fed. R. Civ. P. 72; Fed. R. Crim. P. 59.

This the 17th day of August, 2007.

Signed By:

**_Robert E. Wier_**  *REW*

**United States Magistrate Judge**